**In re A. H. ROBINS COMPANY, INC., Debtor.**

**Employer's Tax Identification No. 54–0486348.**

**In re MEDICAL CLAIMS CONSULTANTS, INC.**

**No. 85–01307–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

Feb. 27, 1997.

John E. Lawson, Jr., Lawson & Eickhoff, Fairfax, VA, for Medical Claims Consultants, Inc.

Orran Lee Brown, Richmond, VA, for Dalkon Shield Claimants Trust.

*MEMORANDUM*

MERHIGE, District Judge.

This matter is before the Court on Medical Claims Consultants, Inc.'s ("MCC") Motion For Clarification Or, In The Alternative, Motion For Reinstatement Of Fees ("Motion To Reinstate Fees") (Docket No. 23017); and MCC's Petition filed January 17, 1997 (Docket No. 29848). For the reasons which follow, the Court will deny MCC's Motion and Petition.

## I.

On March 1, 1995, this Court entered an Order Disallowing Unreasonable Attorneys Fees on Pro Rata Distribution (the "March 1 Order") (Docket No. 21865). Paragraph 2 of that Order prohibits counsel for Dalkon Shield personal injury claimants from "charging or receiving, directly or indirectly, any compensation or fees, based upon or out of any pro rata distribution received by a Dalkon Shield Personal Injury Claimant from the Trust ... in excess of ten percent of such pro rata distribution." This Court rejected all challenges to its jurisdiction to enter the March 1 Order. That ruling was unanimously affirmed by the Court of Appeals for the Fourth Circuit. *In re A.H. Robins Co. (Order Limiting Attorneys Fees)*, 182 B.R. 128 (E.D.Va.1995), *aff'd*, 86 F.3d 364 (4th Cir.1996).[1]

The March 1 Order also prescribed a procedure to be followed by any attorneys or firms who objected to the disallowance and wished the Court to consider reinstating fees above the ten percent limit. The procedure included the requirement that such motions to reinstate fees be filed with the Court no later than April 17, 1995. The Order gave notice of the opportunity for argument and

an evidentiary hearing before the Court. On April 28, 1995, MCC appeared before the Court and presented evidence in support of its Motion To Reinstate Fees. However, having stayed entirely the proceedings on all of the individual motions to reinstate fees during the pendency of the appeal (Docket No. 23514), this Court never addressed the merits of MCC's Motion.

Following the unsuccessful appeal to the Fourth Circuit, this Court entered an Order dated September 17, 1996 addressing the sixty-two motions to reinstate fees still pending before the Court. (Docket No. 29532). That Order directed certain movants to file by November 1, 1996 their proposed findings of fact and conclusions of law in support of their motions to reinstate fees. MCC made a timely submission and on February 24, 1997, the Court heard argument on MCC's Motion.[2] The matter is now ripe for disposition.

## II.

MCC presents two arguments in support of its Motion To Reinstate Fees. First, MCC claims that the March 1 Order does not apply to it because MCC is not a "law firm" and does not charge "attorneys fees." Second, MCC insists that it is entitled to more than ten percent on the pro rata distributions by virtue of the fact that MCC only received sixteen percent fees from its clients on the initial Option 3 settlements.

### A. *Applicability Of The March 1 Order To MCC*

MCC is a for-profit, Virginia stock corporation organized in 1989 by John E. Lawson Jr. ("Lawson") and Jay H. Glasser ("Glas-

---

1. On October 20, 1995, the Court further directed all persons representing claimants receiving the December 1995 60% advance pro rata installment to send "forthwith" to each claimant "at least ninety percent of the amount of such installment." (the "No Escrow/No Costs Order") (Docket No. 28475). That Order prohibited lawyers from escrowing or retaining any more than ten percent of the installment "as attorneys fees or other charges." Subsequently, the Fourth Circuit denied a Motion to Permit Escrow of Disputed Funds filed by several lawyers seeking reversal of the No Escrow/No Costs Order. *In re Paul W. Bergstrom, et al.*, Case No. 95–2239; *In*

*re H. Philip Grossman & James F. Szaller*, Case No. 95–2611 (4th Cir. Nov. 16, 1995). On February 12, 1996, this Court entered a third Order (Docket No. 29012), clarifying that the prohibition on escrow and retention of sums in the No Escrow/No Costs Order applied to *all* 60% pro rata payments made by the Trust after the December 1995 distribution.

2. Although the Trust participated at the February 24, 1997 hearing, it takes no position with respect to MCC's Motion or Petition.

ser"), for the purpose of providing Dalkon Shield claimants assistance in making claims against the Trust.[3] MCC represented 529 claimants and charged a contingent "agency fee" of sixteen percent of any sums recovered by way of settlement.[4] MCC claims that it has never held itself out as a law firm and does not provide legal services to litigants within the judicial system. Instead, MCC served as an "agent" for claimants, and merely assisted claimants with the documentation, evaluation, preparation and filing of their claims with the Trust.[5] MCC also advised its clients whether or not to accept their settlement offers. Of the 529 claimants represented by MCC, 522 accepted their Option 3 offers from the Trust. The remaining seven claimants elected to pursue their claims through ADR, and were represented by MCC at their hearings.

In April 1989, the Virginia State Bar ("VSB") investigated a complaint filed by a Virginia attorney who alleged that MCC's services constituted the unauthorized practice of law. Upon investigation, the VSB concluded that MCC is not a law firm, but a "non-lawyer" implicitly allowed under the rules of the Trust.[6] *Shoemaker v. Lawson,* VSB Docket No. 89–102–1025.

MCC claims that it is not subject to this Court's March 1, Order because it is neither a "law firm" nor an "attorney," and because it does not charge "attorneys fees." MCC places great emphasis on the fact that the March 1 Order makes frequent reference to "attorneys" and "counsel," but not to "agents," "advocates" or "representatives." Accordingly, MCC contends that this Court lacks the authority to modify MCC's contractual agreements with its clients.

■ The Court is not persuaded by MCC's argument. Weighing heavily in the Court's consideration is the fact that if the Court were to exempt MCC from compliance with the March 1 Order simply because MCC purports to act as an agent, then any attorney could effectively avoid the restrictions of the March 1 Order by simply limiting his or her relationship with a claimant to that of a principal and an agent, rather than that of an attorney and a client. To accept MCC's argument would effectively emasculate this impact of the March 1 Order.

The Court also finds that MCC's reliance on the one-page VSB opinion is misplaced. While the VSB determination may be conclusive for purposes of the disciplinary mechanisms of the Virginia Bar, the VSB's findings do not compel the Court to hold that MCC is exempt from this Court's retained jurisdiction over the regulation of unreasonable fees charged to Dalkon Shield claimants.

■ Finally, the same factors which motivated this Court to limit fees to ten percent apply with as much force to MCC as they do to traditional law firms and attorneys. The services performed by MCC differ very little from those provided by firms who represented Dalkon Shield claimants.[7] Like the law

---

3. Glasser is no longer affiliated with MCC. By its Memorandum and Order of July 19, 1989, this Court determined that Glasser's participation as a principal of MCC violated certain protective orders previously entered by the Court. The Court therefore directed that Glasser was not to represent "in any manner or capacity, any interest adverse to Robins or the Trust." (Docket No. 6569, 6570). The Court's Order was subsequently affirmed by the Fourth Circuit. *Glasser v. A.H. Robins Co.,* 950 F.2d 147 (4th Cir.1991), *cert. denied,* 504 U.S. 946, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992). Lawson, an attorney from Fairfax, Virginia, remains the sole principal of MCC.

4. European claimants, however, were charged a twenty-percent contingency fee.

5. MCC's "Agency Agreement" provided:
   I, [the undersigned], hereby appoint MEDICAL CLAIMS CONSULTANTS, INC. (MCC), or its designated representative, as my AGENT, to represent me before the DALKON SHIELD CLAIMANTS TRUST (TRUST) in connection with any and all claims I may have for injuries arising from my use of the Dalkon Shield Intrauterine Contraceptive Device.
   (MCC Ex. 1) (capitals in original).

6. The CRF imposes no requirement that claimants be represented by counsel.

7. Indeed, attorneys who assisted claimants in processing their Option 3 claims with the Trust were simply acting as agents for their clients. The attorney-client relationship encompasses an agent-principal relationship. An attorney is the agent of his client and has the authority to take all lawful steps for the protection of his client's interests. *Virginia Elec. & Power Co. v. Bowers,* 181 Va. 542, 25 S.E.2d 361, 363 (1943).

firms, MCC received its full contractual contingency fee from its clients' initial settlement. Moreover, like the law firms, MCC was put to no additional effort, other than to mail its clients their checks, in order for the firm to receive ten percent of the pro rata distributions. In short, this Court finds little reason why, in this context, MCC should be treated any differently from attorneys who acted as agents for their clients, simply because MCC is not qualified to engage in the practice of law.

### B. *MCC Only Received 16% Fees*

MCC also argues that the Court should grant its Motion on the basis that its sixteen percent contingency fee was significantly less that the 33%–40% fees charged by traditional law firms. MCC suggests that because it did not receive as much from the initial Option 3 settlements, the Court should allow MCC to collect its full sixteen percent from the pro rata distributions. MCC contends that it provided a valuable, but modestly-priced service to many claimants and that the Court's March 1 Order has "a chilling effect on others who may attempt to provide such modest-priced assistance for other, similar matters in the future." (Mot. at 3). MCC claims that it has not yet recovered its operational expenses and that the Court's Order jeopardizes its financial viability.[8]

■ Again, the Court is not persuaded by MCC's argument. MCC set its contingency fee at sixteen percent well before it knew, or ever expected, that claimants would be, in effect, paid twice by virtue of the pro rata distributions. Any suggestion that MCC charged a relatively low rate with the expectation that it would receive additional fees from future pro rata distributions is without merit. Moreover, to the extent that MCC feels that a ten percent fee is inadequate, the

Court notes that the Fourth Circuit has indicated that the ten percent fee is "not only reasonable, but overly generous." *Robins,* 86 F.3d at 377. Finally, in each case where MCC charged sixteen percent, the firm earned its fee without ever having to do anything more than prepare and submit a client's claim to the Trust.[9] This was because the Trust's Option 3 offers were non-negotiable and extended to the claimant as a best and final offer and not an opening bid. *Id.* at 369; *see also In re A.H. Robins Co. (Besag v. Dalkon Shield Claimants Trust),* 197 B.R. 590 (E.D.Va.1994). Thus, once the Trust evaluated a claim and made its offer, there was little left for MCC to do with respect to its representation of the claimant. For these reasons, the Court is not satisfied that MCC is entitled to reinstatement of its fees.

### III.

■ In addition to its Motion To Reinstate Fees, MCC filed a Petition asking this Court to authorize MCC to place the six percent disputed fees in escrow pending this Court's ruling on its Motion. Although the Court never granted MCC's Petition, MCC nevertheless proceeded to escrow the disputed funds. Lest there be any confusion regarding the propriety of MCC's actions, this Court today makes clear what heretofore was implicit in its prior Orders concerning this issue: The failure of any party representing a Dalkon Shield claimant to forthwith transmit to the claimant at least ninety percent of the amount of any pro rata installment will be deemed a violation of this Court's March 1 Order. Likewise, the escrow (other than is necessary to effect the immediate negotiation of the payment instrument) or retention of any more than ten percent of any pro rata installment as attorneys fees or other

---

8. At the hearing, the Trust offered the following estimates regarding the fees earned by MCC: MCC's clients received approximately $5.3 million from the initial Option 3 settlements. Based on a sixteen percent fee, MCC received approximately $850,000 in fees. MCC's clients then received $2.9 million from the 60% pro rata distribution. Based on the ten percent limit, MCC received another $298,000 in allowed fees for simply forwarding its clients their checks. MCC's clients then received an additional $1.2

million from the 25% pro rata distribution. Accordingly, based on the ten percent limit, MCC received another $124,000 in allowed fees. In total, MCC received approximately $1.2 million in fees.

9. Under the Agency Agreement, MCC's fee increased to twenty-five percent for all claims that proceeded to ADR or Arbitration.

charges will be deemed a violation of this Court's March 1 Order. In light of the Court's ruling on MCC's Motion To Reinstate Fees, MCC's Petition will be denied as moot.