205 B.R. 771 (1997)
In re A.H. ROBINS COMPANY, INC., Debtor.
Employer's Tax Identification No. XX-XXXXXXX.
In re Henri E. NORRIS, Esq.
No. 85-01307-R.
United States District Court, E.D. Virginia, Richmond Division.
March 3, 1997.
Henri E. Norris, San Francisco, CA, for movant.
Orran Lee Brown, Richmond, VA, for Dalkon Shield Claimants Trust.

MEMORANDUM
MERHIGE, District Judge.
This matter is before the Court on the Motion Of Henri E. Norris, Esq. ("Norris") For Reinstatement Of Attorney's Fees. (Docket No. 23052). For the reasons which follow, the Court will deny the Motion.

I.
On March 1, 1995, this Court entered an Order Disallowing Unreasonable Attorneys Fees on Pro Rata Distribution (the "March 1 Order") (Docket No. 21865). Paragraph 2 of that Order prohibits counsel for Dalkon Shield personal injury claimants from "charging or receiving, directly or indirectly, any compensation or fees, based upon or out of any pro rata distribution received by a Dalkon Shield Personal Injury Claimant from the Trust . . . in excess of ten percent of such pro rata distribution." This Court rejected all challenges to its jurisdiction to enter the March 1 Order. That ruling was unanimously affirmed by the Court of Appeals for the Fourth Circuit. In re Robins Co. (Order Limiting Attorneys Fees), 182 B.R. 128 (E.D.Va.1995), aff'd, 86 F.3d 364 (4th Cir.1996)
The March 1 Order also prescribed a procedure to be followed by any attorneys or firms who objected to the disallowance and wished the Court to consider reinstating fees *772 above the ten percent limit. The procedure included the requirement that such motions to reinstate fees be filed with the Court no later than April 17, 1995. The Order gave notice of the opportunity for argument and an evidentiary hearing before the Court. On April 28, 1995, Norris appeared, by counsel, before the Court and submitted evidence in support of her Motion To Reinstate Fees.[1] However, having stayed entirely the proceedings on all of the individual motions to reinstate fees during the pendency of the appeal (Docket No. 23514), this Court never addressed the merits of Norris' Motion.
Following the unsuccessful appeal to the Fourth Circuit, this Court entered an Order dated September 17, 1996 addressing the sixty-two motions to reinstate fees still pending before the Court. (Docket No. 29532). That Order directed certain movants to file by November 1, 1996 their proposed findings of fact and conclusions of law in support of their motions to reinstate fees. Norris made a timely submission and the matter is now ripe for disposition.[2]

II.
Norris is an attorney from Berkeley, California and is currently affiliated with Medical Legal Consultants of Washington ("MLC"), a firm representing Dalkon Shield claimants. The record reflects that Norris represented her first Dalkon Shield client, a personal friend, in June 1985, two months before the filing of the Robins bankruptcy petition. (Dep. at 8-9). Sometime thereafter, Norris became associated with Action Alert For Women ("Action Alert"), a nonprofit Dalkon Shield support group. (Dep. at 9-16). From 1985 to 1988, Norris served as pro bono counsel for Action Alert, but did not represent any individual claimants in that capacity. (Dep. at 13, 15-16). After Action Alert ended operations in 1988, Norris agreed to represent fifteen to twenty claimants who had been active in Action Alert. (Dep. at 16-17). Later that year, Norris began her affiliation with MLC. (Dep.21-22).
The record reflects that Norris has represented approximately 200 Dalkon Shield claimants over the past twelve years. (Dep. at 23). She has generally charged her clients a contingency fee of 33 1/3%. (Dep. at 17). However, Norris claims that in approximately twenty instances, she entirely waived her fee or reduced her fee from 33 1/3% to 25% when she felt that the Trust's settlement offer was inadequate. (Mot. at 2; Dep. at 41, 57-60). Norris estimates that these waivers cost MLC a total of $40,000 to $50,000 in fees, which would constitute a loss of $10,000 to Norris personally. (Dep. at 63-64, 66).[3] Norris also testified that she turned down approximately thirty to fifty cases where her initial discussion with the claimant indicated that the claimant could easily pursue her own claim without legal representation. (Dep. at 58-60).
Norris states that her Dalkon Shield practice required her to incur substantial debt, and that various creditors have charged her an average of 30% interest per year. (Mot. at 3; Dep. at 95). She states that her practice has not been profitable and that "if the [pro rata] fee is reduced, it will make this an unprofitable, in a financial sense, expenditure of my time as a lawyer over these years." (Dep. at 40-41).
Finally, Norris describes her practice as a "holistic approach" which "represent[s] the whole person." (Mot. at 4). Accordingly, Norris claims to have "spent numerous uncompensated hours addressing the emotional issues experienced by our clients." (Mot. at 4).
The Trust's records indicate that of Norris' approximately 200 clients, all but thirty-five accepted their settlement offers from the Trust. (Dep. at 98). As of the date of Norris' deposition, none of her remaining thirty-five clients had opted to proceed to *773 trial or arbitration; the clients had instead chosen ADR. (Dep. at 106). The Trust states that it has paid $5,728,017.01 in settlements to Norris' 200 clients. (Dep. at 100, 120). Based on a one-third fee, MLC received $1.9 million in fees from Norris' clients, of which Norris received approximately $750,000. (Dep. at 101, 120).

III.
The Court has reviewed Norris' Motion and deposition and is not satisfied that she has met her burden of showing that she is entitled to more than a ten-percent fee from the pro rata distributions. Norris' main contention is that she is entitled to more than a ten percent fee because in twenty, or one-tenth, of her cases, she either waived or reduced her fee.
Accepting, arguendo, the accuracy of Norris' estimates regarding her waiver and reduction of fees, these occasional and voluntary acts do not constitute the "extenuating circumstances" that this Court has held to be required in order for an attorney or firm to be entitled to a fee of more than ten percent. Robins (Order Limiting Attorneys Fees), 182 B.R. at 138. In fact, this Court has recently denied a similar motion by a firm seeking reinstatement of its fees based on the fact that the firm only charged clients a 16% fee. In re A.H. Robins Co. (Medical Claims Consultants, Inc.), 205 B.R. 767 (E.D.Va.1997).
While it appears that Norris has expended considerable effort on behalf her clients, this Court has emphasized that when considering pro rata fees, the focus is not on the attorney's efforts on the underlying claim, but on the efforts required for the client to receive the pro rata payment. See Robins (Order Limiting Attorney Fees), 182 B.R. at 135 ("[T]he reasonableness of fees charged against a claimant's underlying recovery from the Trust and the reasonableness of fees charged against a claimant's pro rata payment [are two distinct issues]. In reviewing the reasonableness of fees, there is a critical distinction between a claimant's underlying recovery on a Dalkon Shield claim and her subsequent receipt of a pro rata payment."). This is because the availability of pro rata payments did not result from the legal efforts of counsel, but from effective management of the Trust. Id. at 136. Norris has submitted no evidence regarding the work required for her to distribute the pro rata payments to her clients.
Finally, the Court notes that Norris set her contingency fee well before she knew, or ever expected, that claimants would be, in effect, paid twice by virtue of the pro rata distributions. Norris' suggestion that she set her rate with the expectation that she would receive additional fees from future pro rata distributions is simply without merit.[4]See id. at 140 ("[N]o movant can legitimately claim that he expected, from the outset of this litigation, to receive compensation through a pro rata payment to claimants; indeed, the Trustees were unsure of the Trust's ability to compensate all timely claims, not to mention its ability to make a bonus payment, until relatively recently."), aff'd, 86 F.3d at 375 ("The attorneys argued that they bargained for and expected to participate in a pro rata distribution. This is a rather unseemly argument coming from attorneys who previously contended that the $2.47 billion in the Trust was inadequate and should be raised to as much as $7 billion and that the possibility of a pro rata distribution was highly unlikely.").
In short, Norris has failed to present the type of "extraordinary case" that would justify relief from the Court's March 1, 1995 Order. See id. at 140 n. 15. In the absence of such a showing, the ten percent fee is "not only reasonable, but overly generous." Robins, 86 F.3d at 377. Norris has expressed an apparently genuine interest in the well-being of Dalkon Shield claimants. It is hard to *774 imagine how the claimants well-being would be enhanced by allowing her to retain an additional 23 1/3% fees for the purely ministerial tasks associated with the distribution of the pro rata payments. Norris' Motion will be denied.
An appropriate Order shall issue.
NOTES
[1] Norris' evidence consisted of her deposition taken on April 25, 1995. The Court accepted the deposition into evidence as what Norris' testimony would have been if she had appeared in court.
[2] The Trust takes no position with respect to Norris' Motion.
[3] It appears that the majority of instances where Norris waived her fee were cases where the client received an Option 1 or Option 2 settlement. Norris states that she waived her fee in Option 3 settlements on only four or five occasions. (Dep. at 57, 61).
[4] On cross-examination, Norris testified that in 1988 she felt that a pro rata distribution was "likely." (Dep. at 84). This statement directly contradicts her earlier testimony on direct examination where she indicated that at the time of the confirmation of the Plan, she felt that the $2.47 fund was inadequate. (Dep. at 18) ("I know that feeling that the fund was inadequate was a main point; feeling sort of a slap in the face that punitive damages had been negotiated out was another."). It appears that MLC shared her concern regarding the adequacy of the $2.47 billion, and so argued on appeal. (Dep.116-17).