**In re A.H. ROBINS COMPANY, INCORPORATED, Debtor.**

**Employer's Tax Identification No. 54–0486348.**

**In re CASHMAN & PARTNERS.**

**No. 85–01307–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

July 8, 1997.

---

Orran Lee Brown, Richmond, VA, for Dalkon Shield Claimants Trust.

## MEMORANDUM

MERHIGE, District Judge.

The Court is in receipt of the Affidavit of Dr. Peter Cashman ("Cashman") of the law firm of Cashman & Partners. Cashman has submitted his Affidavit as directed by this Court's Order dated February 24, 1997 (the "February 24 Order") (Docket No. 29876). In his Affidavit, Cashman explains the circumstances surrounding his decision to withhold sums in excess of 10% of the pro rata distributions made by the Dalkon Shield Claimants Trust (the "Trust") in violation of this Court's March 1, 1995 Order. Cashman also requests that, in light of his explanation, the Court reconsider the February 24 Order, including the Court's denial of his Motion For (Partial) Reinstatement of Attorneys' Fees. Accordingly, the Court will construe Cashman's Affidavit as a Motion For Reconsideration. For the reasons which follow, the Court will deny the Motion For Reconsideration.

### I. Background

On March 1, 1995, this Court entered an Order Disallowing Unreasonable Attorneys Fees on Pro Rata Distribution (the "March 1 Order") (Docket No. 21865). Paragraph 2 of that Order prohibits counsel for Dalkon Shield personal injury claimants from "charging or receiving, directly or indirectly, any compensation or fees, based upon or out of any pro rata distribution received by a Dalkon Shield personal injury claimant from the Trust ... in excess of ten percent of such pro rata distribution." This Court rejected all challenges to its jurisdiction to enter the March 1 Order. That ruling was unanimously affirmed by the Court of Appeals for the Fourth Circuit. *In re Robins Co. (Order Limiting Attorneys Fees)*, 182 B.R. 128 (E.D.Va.1995), *aff'd*, 86 F.3d 364 (4th Cir. 1996).[1]

---

1. On October 20, 1995, the Court entered a further Order directing all persons representing claimants receiving the sixty percent advance pro rata installment being paid by the Trust to claimants in December 1995 to send forthwith to each claimant "at least ninety percent of the amount of such installment." (Docket No. 28475) (the "No Escrow/No Costs Order"). That Order prohibited lawyers from escrowing or retaining any more than 10% of the installment "as attorneys fees or other charges." It also directed the Trust to conduct random audits of claimants and their

The March 1 Order prescribed a procedure to be followed by any attorneys or firms who objected to the disallowance and wished the Court to consider reinstating fees above the ten percent limit. The procedure included the requirement that such motions to reinstate fees be filed with this Court no later than April 17, 1995. The Order gave notice of the opportunity for argument and an evidentiary hearing before the Court beginning on April 27, 1996.

On April 17, 1995, Cashman filed his Motion For Reinstatement Of Disallowed Attorneys Fees ("Motion For Reinstatement") (Docket No. 23050), and on April 28, 1995, he appeared before the Court and presented evidence in support of his motion. Having stayed entirely the proceedings on all of the individual motions to reinstate fees during the pendency of the appeal, this Court never addressed the merits of Cashman's motion.

Following the unsuccessful appeal to the Fourth Circuit, this Court entered an Order dated September 17, 1996, which addressed the sixty-two motions to reinstate fees still pending before the Court. That Order directed Cashman to file by November 1, 1996 his proposed findings of fact and conclusions of law with respect to his motion. Cashman timely filed his proposed findings and conclusions as well as a supplemental memorandum in support of his motion. On February 24, 1997, the Court denied Cashman's Motion For Reinstatement. Cashman now asks that the Court reconsider that determination, as well as the other elements of the February 24 Order.[2]

## II. Cashman's Motion For Reinstatement

■ Cashman is a lawyer from Sydney, Australia who has represented over 3,000 Australian Dalkon Shield claimants, charging a maximum contingency fee of 25%. (Tr. at 393, 400).[3] Cashman testified that this fee was taken from a claimant's total recovery, before costs were deducted. (Tr. 413, 417). The record reflects that as of the date of the April 1995 hearing, Cashman had represented approximately 2,500 Dalkon Shield claimants who had received payments from the Trust totaling approximately $34 million. (Tr. at 418–19). Finally, Cashman stated that he has received approximately $7.5 million in fees and expenses as a result of his Dalkon Shield work. (Tr. at 434–36).[4]

In his Motion For Reinstatement, Cashman asks that the Court permit him to retain more than 10% from the pro rata payment so that his "overall fee"—that is, his average fee after all of the pro rata distributions are made—will equal that of most American firms which charged a one-third contingency fee. Cashman argues that because his firm limited its fee to 25% of a claimant's settlement, its overall fee after the pro rata payment, in light of the 10% cap, will be 17.5% of the total amount paid a claimant. In contrast, a firm that charged a one-third fee and retained 10% of the pro-rate payment, would receive an overall fee of 21.66%. In light of this disparity, Cashman asks that he be allowed to withhold more than 10% of the pro rata payment so that his overall fee will equal 21.66%, and place him in the same position as other firms.

counsel to ensure compliance with the Order. Subsequently, the Fourth Circuit denied a Motion to Permit Escrow of Disputed Funds filed by several lawyers seeking reversal of the No Escrow/No Costs Order. *In re Paul W. Bergstrom, et al.*, 86 F.3d 364 and *In re H. Philip Grossman & James F. Szaller*, Case No. 95–2611 (4th Cir. Nov. 16, 1995). On February 12, 1996, this Court entered a third Order (Docket No. 29012), clarifying that the prohibition on escrow and retention of sums in the No Escrow/No Costs Order applied to all sixty percent pro rata payments made by the Trust after the December 1995 distribution.

2. The Trust took no position with respect to Cashman's Motion For Reinstatement. Similarly, the Trust takes no position with respect to Cashman's Motion For Reconsideration.

3. "Tr." refers to the transcript of the April 28, 1995 hearing where Cashman testified in support of his Motion For Reinstatement.

4. The Court notes that a 25% fee from the $34 million that Cashman's clients recovered from the Trust would result in more than $7.5 million in attorneys' fees. Cashman explained, however, that the 25% fee was a maximum, and that in some cases the fee was less. (Tr. at 435).

The Court finds that Cashman's decision to limit his fee to 25% does not constitute the type of "extenuating circumstances" that this Court has held to be required in order for an attorney or firm to be entitled to a fee of more than ten percent. (*Order Limiting Attorneys Fees* ), 182 B.R. at 138. Indeed, this Court has rejected similar arguments made by other firms seeking to retain more than 10% of the pro rata payment. Recently, in *In re A.H. Robins (Medical Claims Consultants)*, 205 B.R. 767 (E.D.Va.1997), the Court considered a motion of a firm that sought to retain more than 10% of the pro rata on the basis that the firm had only charged a 16% fee. The firm also argued that the 10% limit jeopardized its financial viability. This Court declined to permit a higher fee, noting that the firm set its contingency fee well before it knew, or ever expected, that most claimants would be, in effect, paid twice by virtue of the pro rata distribution. *Id.* at 770. Likewise, in the instant case, the Court finds that the mere fact that Cashman will be paid a lower overall rate than some of his American colleagues does not constitute grounds for relief from the 10% limit.

 It must also be remembered that the pro rata payment is not an entitlement, but rather a "bonus" that is paid over and above the amount of an individual's full settlement of a claim. *Robins*, 86 F.3d at 369–70, 375; *see also In re A.H. Robins (Weisfuse v. Wagner)*, 206 B.R. 810 (E.D.Va.1997) (counsel not necessarily entitled to a 10% fee). This is because the availability of the pro rata payment did not result from the legal efforts of counsel, but from the effective management of the Trust. (*Order Limiting Attorneys Fees* ), 182 B.R. at 136. Accordingly, when considering pro rata fees, the Court's focus is not on an attorney's efforts on the underlying claim, but on the efforts required for the client to receive the pro rata payment. *Id.* at 135; *In re A.H. Robins (Henri E. Norris, Esq.)*, 205 B.R. 771, 773 (E.D.Va.1997); *In re A.H. Robins (Stan L. Linker, Esq.)*, 211 B.R. 533 (E.D.Va.1997). Cashman presented no evidence at the April 28 hearing regarding the work required for him to distribute the pro rata payments to his clients. Indeed, in light of the Court's February 24 Order directing the Trust to send all future pro rata payments directly to Cashman's clients, it is difficult to see why Cashman is entitled to any fee from the pro rata at all.

## III. Escrowing Of Funds

 By a letter dated February 6, 1997, Dalkon Shield claimant Margot Holden ("Claimant Holden") informed the Court that Cashman had violated this Court's Orders by withholding more than 10% of her pro rata distribution. Accordingly, the Court entered the February 24 Order which stated that in the event that the Court had been correctly advised, Cashman was directed to forward to his clients any funds held in excess of the 10% allowed by the March 1 Order. The Court also withdrew Cashman's authority to practice law in this Court and directed the Trust to send all future pro rata payments directly to Cashman's clients rather than to Cashman.

In his Affidavit, Cashman admits that he retained more than 10% of his clients' pro rata distributions, but explains that he forwarded the amount due to a client immediately upon the client's objection to this practice. (Aff.¶¶ 34, 35). In the case of Claimant Holden, Cashman states that she was paid the amount due to her prior to the Court's entry of its February 24 Order. (Aff.¶¶ 39, 40). Further, Cashman argues that in a letter dated December 18, 1996, he sought the Court's guidance as to the propriety of his escrowing funds. (Aff.¶ 26). In light of these facts, Cashman asks that the Court reconsider the February 24 Order.

The Court finds that it has been correctly advised by Claimant Holden that Cashman retained more than 10% of the pro rata distribution. Cashman readily admits that he placed an excess portion of the pro rata distribution in escrow without the express permission of this Court. Further, Cashman concedes that he was on notice that this practice may be deemed a violation of the Court's March 1 Order. Nevertheless, rather than properly petition the Court for permission to escrow funds, Cashman instead

sent several letters to the Court seeking guidance on this issue. Cashman states that having received no reply from the Court, he inferred that the Court was aware of his position and had not expressed any concern.

The Court finds that Cashman's explanation is plainly inadequate and does not excuse his conduct. As a licensed attorney, Cashman is certainly aware that the Court does not communicate with litigants through correspondence. If Cashman wished to obtain relief from the March 1 Order, he should have filed the appropriate motion with the Court and scheduled argument. His informal efforts to seek guidance from counsel for the Trust and Court personnel do not excuse his willful violation of the March 1 Order. Accordingly, Cashman's Motion For Reconsideration will be denied and the February 24 Order will remain in full effect.