Jay H. GLASSER, Claimant–Appellant,

v.

A.H. ROBINS COMPANY,
INCORPORATED,
Debtor–Appellee,

Dalkon Shield Claimants
Trust, Intervenor.

No. 89–1061.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 9, 1991.

Decided Nov. 15, 1991.

Edwin Vieira, Jr., Independent Hill, Va., argued (John E. Larson, Jr., Ralph V. Eickhoff, Jr., Lawson & Eickhoff, Fairfax, Va., on brief), for claimant-appellant.

Orran Lee Brown, Sr., Christian, Barton, Epps, Brent & Chappell, Richmond, Va., (Michael W. Smith, Christian, Barton, Epps, Brent & Chappell, Linda J. Thomason, Mays & Valentine, Richmond, Va., on brief), for debtor-appellee.

Before RUSSELL and WIDENER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

OPINION

WIDENER, Circuit Judge:

Jay Howard Glasser appeals the district court's denial of his motion to be released from certain protective orders of the court. We find no error and affirm.

This case is ancillary to and is another chapter in the Dalkon Shield litigation involving A.H. Robins. In March 1986, the district court appointed Professor Francis McGovern as an expert to advise the court on the estimation of Dalkon Shield Claims. In this capacity, McGovern had access to several thousand files from Dalkon Shield claims and suits that were resolved prior to the Chapter 11 filing of A.H. Robins (Closed Files). Some of these files were subject to individual confidentiality agreements. To ensure the confidentiality of the files, the district court entered its first protective order concerning these files on July 10, 1986. The order provided that "any person authorized . . . to examine the

contents of [the Closed Files] shall not disclose their contents, in part or in full, to any person not expressly authorized to such access by this or subsequent order of this Court." The court entered two other orders with similar restrictions on September 18, 1986, and June 26, 1987.

The Committee of Dalkon Shield Claimants, the official representative of the interests of Dalkon Shield claimants in the Chapter 11 case, filed an application for authorization to employ Glasser as an expert to assist it in analyzing and evaluating Dalkon Shield claims. In its proposed budget, the committee stated that one of Glasser's duties would be to "[s]tudy 'representative' closed claims folders to determine available data and coding problems...." The court authorized the claimant's committee to employ Glasser *nunc pro tunc* to June 12, 1986. Glasser then reviewed pending and settled claims including those in the Closed Files. As of July 12, 1988, Glasser had billed a total of $307,156.25 for professional fees for evaluating Dalkon Shield claims commencing with August 21, 1985.

On January 9, 1989, Medical Claims Consultants, Inc. (MCC), was issued a certificate of incorporation by the Commonwealth of Virginia. Glasser is one of the principal officers of MCC. MCC advertises itself to be comprised of "specialists in Dalkon Shield claims analysis." *

On June 22, 1989, A.H. Robins Co. filed a motion requesting that the court enter an order requiring Glasser to show cause why he should not be held in contempt of court for violating the court's protective orders through his participation in MCC. The next day, Glasser requested that he be released from the court's protective orders. A.H. Robins then requested that its show cause motion be held in abeyance pending the district court's decision on Glasser's request. The court granted Robins' motion to hold the contempt proceeding in abeyance.

After a hearing on Glasser's motion to be relieved from the protective orders, the district court denied his motion. The court found that

the Closed Files contained information concerning the exact dollar amounts of judgments and settlements received by individual claimants prior to the filing of Robins' petition. It is exactly this data which was of crucial importance in reaching a valid estimation of Robins' total Dalkon Shield-related liability. The Court perceived that possession of this information, however, would also be very useful to anyone representing Dalkon Shield claimants in negotiations with or litigation against the Trust. Knowing the historical values placed upon particular types of injuries resulting from use of the Dalkon Shield would give a claimant a "leg up" on others in making demand for compensation upon the Trust.

\* \* \* \* \* \*

In representing Dalkon Shield claimants and advising them as to the value of their claims, Glasser has necessarily utilized information gleaned from the Closed Files, even if he has not directly disclosed the data underlying his recom-

---

\* In his letter to the Director of the Claims Resolution Facility, John E. Lawson described Medical Claims Consultants as follows:

As a result of our analysis, we organized MEDICAL CLAIMS CONSULTANTS (MCC) to assist Dalkon Shield Claimants with their claims. The principal officers of MCC have extensive contacts within the health care and legal community and are uniquely qualified to serve as Agents for Dalkon Shield Claimants. Jay H. Glasser, PhD, worked for over one and one-half years as a Court appointed health and statistics expert to analyze Dalkon Shield claims. As part of his work he led an analytic team that linked previously settled claims information to estimate current claims

values. His work on the Dalkon Shield concentrated on Claimants surveys, the classification of injuries and alternative causation....

\* \* \* \* \* \*

MCC was organized to provide the basic services that I described earlier in this letter, drawing upon the expertise of a variety of medical health care, legal and other professionals (e.g., physicians, nurses, health statisticians, epidemiologists, attorneys, and economists) to evaluate and document individual claims. Its strength lies in the fact that it brings together a broad range of technical expertise essential for identifying, establishing and documenting medical claims.

mendations. It is simply impermissible for Glasser and his clients to use protected information, when other claimants and their representatives are forbidden access to it.

On appeal Glasser argues that the district court's protective orders do not encompass Glasser's activities at MCC and if the protective orders do restrain Glasser's activities at MCC, the orders are violative of the First and Fifth Amendments to the United States Constitution.

■ The district court made a factual finding that "Glasser has necessarily utilized information gleaned from the Closed Files, even if he has not directly disclosed the data underlying his recommendations." The district court was not clearly erroneous in making that finding. In a letter to the Director of the Claims Resolution Facility of the Dalkon Shield Claimants Trust, Glasser's associate at MCC, John E. Lawson, Jr., stated "... I subsequently purchased a list of names and addresses in order to test an idea that a friend of mine at the University of Texas (Dr. Jay Glasser) and I had developed *as a result of his observations as a Court-appointed expert* working with Dr. Francis McGovern in the bankruptcy litigation which led to the creation of the Trust." Letter dated December 28, 1988, from John E. Lawson, Jr. to Dr. Michael H. Sheppard (emphasis added). Faced with this statement by Glasser's associate at MCC, we are of opinion that the district court's factual findings are not clearly erroneous. Therefore, we find no merit in Glasser's assertion that the protective order does not apply to his activities at MCC.

■ Glasser next contends that the protective orders violate the First and Fifth Amendments by limiting his freedom of speech and freedom to contract. The reasoning of the Supreme Court in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) leads to a determination that the First Amendment is not offended by the protective orders at issue in this case. In *Seattle Times*, the Court held that when "a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the

context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." 467 U.S. at 37, 104 S.Ct. at 2209. While that case involved the use of protected information by a litigant, we see no reason why the rule would not be equally applicable to a court-appointed expert. The facts in the instant case are even more compelling for upholding the order. The initial protective order was entered before Glasser was appointed as an expert and Glasser was a willing participant in the project. In addition, Glasser was handsomely compensated for performing as a court-appointed expert.

■ We find no merit to Glasser's claims that his Fifth Amendment rights were violated by the protective order. We are aware of no authority for the proposition that a highly paid court-appointed expert with access to confidential information may later use his position and knowledge gained from that experience in representing individuals involved in the same matter. Glasser seeks an order allowing him to profit from confidential information obtained as a court-appointed expert. That will not do.

The order of the district court appealed from is accordingly

AFFIRMED.