**ALCON LABORATORIES, INC.; Alcon Research, Ltd.; Alcon Universal, Ltd.; and Bausch & Lomb, Inc., Plaintiffs,**

v.

**ALLERGAN, INC.; Allergan Sales, LLC, Defendants.**

**No. CV 02–1192 DOC.**

United States District Court, C.D. California, Southern Division.

March 20, 2003.

May 5, 2003.

---

**17.** This conference shall be in place of the status conference previously scheduled for

Brian Coggio, Daniel J. Thomasch, M. Veronica Mullally, Orrick Herrington & Sutcliffe, New York City, Kenneth S. Roberts, Orrick Herrington & Sutcliffe, Darrell L. Olson, Don W. Martens, Sheila N. Swaroop, Knobbe Martens Olson & Bear, Irvine, Denis A. Polyn, Bausch & Lomb, Legal Department, Rochester, NY, for Alcon Laboratories, Inc., Alcon Research Ltd., Alcon Inc, Bausch & Lomb Incorporated, plaintiffs.

Dina Grinshpun, Fish & Richardson, San Diego, CA, Michael J. Kane, Jonathan E. Singer, Fish & Richardson, Minneapolis, MN, for Allergan Inc, Allergan Sales LLC, defendants.

## *ORDER* GRANTING MOTION FOR SUMMARY JUDGMENT OF NONINFRINGMENT

CARTER, District Judge.

Before the Court is Plaintiffs Alcon Laboratories, Inc., Alcon Research, Ltd., and Alcon Universal, Ltd.'s (collectively Alcon), and Bausch & Lomb, Inc.'s (Bausch & Lomb) motions for summary judgment in this declaratory judgment action. After reviewing the moving, opposing, and replying papers, after oral argument on Monday, March 17, 2003, and for the reasons set forth below, the Court GRANTS the motions.

## I.

### BACKGROUND

The Drug Price Competition and Patent Term Restoration Act of 1984, also known as the Hatch–Waxman Act, was adopted by Congress to address the need to bring generic drugs to the market quickly and changed the way in which the Food and Drug Administration (FDA) approved the manufacture and use of new and generic drugs. *See Glaxo, Inc. v. Novopharm, Ltd.,* 110 F.3d 1562, 1568 (Fed.Cir.1997).

In order to market a new drug, the maker of the drug must obtain approval from the FDA. 21 U.S.C. § 355(a). In order to obtain FDA approval, the maker must submit a New Drug Application (NDA) which includes extensive informa-

tion and testing of the new drug to insure its safety. See 21 U.S.C. § 355(b). Once the NDA is approved, the holder of an approved NDA is automatically granted a five-year period of exclusivity in marketing its drug. 21 U.S.C. § 355(c)(3)(D)(ii). That period of exclusivity is extended by an additional six months if the maker conducts certain tests to insure its safety and efficacy in children. 21 U.S.C. § 355a(a)(1)(i). During this period of exclusivity, the FDA may not grant any other drug maker a license to manufacture and sell the same drug or its bioequivalent. This period of exclusivity is intended to recognize the efforts and costs that the drug maker undertook in the first place to test and insure the safety and efficacy of a new, or pioneer, drug.

On September 6, 1996, Allergan obtained FDA approval of its NDA, granting approval for the manufacture and sale of Alphagan®. Alphagan®, a 0.2% concentration brimonidine tartrate solution, was developed by Allergan for treatment of open-angle glaucoma. Specifically, Alphagan® was developed to reduce intraocular pressure (IOP) as a treatment for glaucoma.

Glaucoma is caused by damage to the optical cells. As those cells are damaged, vision becomes impaired. Generally, individuals that suffer from glaucoma lose their peripheral vision and subsequently develop blind spots at the sides. If not arrested, it may lead to blindness. For decades, the traditional view of the medical profession was that glaucoma was caused by an abnormally high IOP, which pushed against the optic nerve causing it to be damaged. Treatment for glaucoma thus consisted of reducing IOP. In the early 1990's, however, Allergan scientists discovered that brimonidine had neuroprotective properties such that applying it to nerve cells make them less susceptible to injury and degeneration than those not treated with brimonidine. Thus, Alphagan® may be a potent treatment for glaucoma as a neuroprotective agent under this new view of the disease.

Allergan was entitled to a five year period of exclusivity under 21 U.S.C. § 355(c)(3)(D)(ii) and an additional six month period under 21 U.S.C. § 355a(a)(1)(i). Brimonidine, however, was not protected by a patent, and thus Allergan's period of exclusivity was originally set to expire March 6, 2002. Accordingly, in 1999 and 2000, Allergan applied for patents covering this new use of brimonidine. In 2001, Allergan was granted U.S. Patents Nos. 6,194,415 (the '415 Patent) and 6,248,741 (the '741 Patent), both of which are continuations in part of U.S. Patent No. 5,856,329 (the '329 Patent). After the patents were issued in 2001, Allergan listed them in the FDA's "Approved Drug Products with Therapeutic Equivalence Evaluations" publication (the Orange Book) in order to give notice to generic manufacturers that the patents were related to the FDA approved use of Alphagan®.

Near the end of the five year period of exclusivity, a drug maker may file an Abbreviated New Drug Application (ANDA). See 21 U.S.C. § 355(j). A party submitting an ANDA need only show that the proposed new drug is the same, or the bioequivalent, of the pioneer drug. After Allergan's listing of the '741 and '329 patents in the Orange Book, Alcon filed in October 2001 an ANDA with the FDA, seeking to sell a generic brimonidine solution for use in reducing IOP with the same FDA labeling requirements approved for Alphagan®. Specifically, Alcon filed a Paragraph IV Certification claiming that its drug was non-infringing or that the patents were invalid.

In filing a Paragraph IV Certification, the generic drug manufacturer certifies

that the pioneer drug's patent is either expired or will not be infringed by the generic drug. *See* 21 U.S.C. § 355(j)(2)(A)(vii). Under Section 202 of the Hatch–Waxman Act, Congress has specifically exempted a party that uses a patent in order to prepare an application for commercial marketing of a drug from liability for infringement. 35 U.S.C. § 271(e)(1). However, the submission of an ANDA is an act of infringement. 35 U.S.C. § 271(e)(2)(A). This infringement is "highly artificial." *See Eli Lilly and Co. v. Medtronic, Inc.,* 496 U.S. 661, 676, 110 S.Ct. 2683, 2691, 110 L.Ed.2d 605 (1990). Congress enacted this statutory scheme in order to allow generic drugs to come to the market as quickly as possible. *See id.* By allowing a generic drug maker to use the patent as it prepares to obtain FDA approval, the drug maker can bring the generic drug to market as soon as the patent expires, rather than waiting for the patent to expire before undertaking years of regulatory hurdles.

By the same token, in allowing the filing of the ANDA to amount to an act of infringement, a generic manufacturer may challenge the validity of a patent before the drug comes to market. A party submitting an ANDA with a Paragraph IV Certification must inform the drug and patent owner of the application. *See* 21 U.S.C. § 355(j)(2)(B)(i). The patent owner then has 45 days in which to file an action for infringement, the basis of which is the "artificial" act of infringement of filing an ANDA. If the patent-holder does not sue for infringement, the ANDA may be quickly approved and marketed as soon as all regulatory requirements are met. If the patent-holder does file suit, the ANDA may not be approved until either the date that the Court determines either invalidity or non-infringement, the date the patent expires, or 30 months (subject to modification by the Court) after the ANDA patent

holder receives notice of the Paragraph IV Certification.

Alcon notified Allergan of its filing of a Paragraph IV Certification on November 29, 2001 and Allergan brought suit within the statutorily required 45 days on January 9, 2002. Alcon then moved for summary judgment in this Court based on its argument that its proposed generic drug, labeled for use as an IOP reducing agent, but not as a neuroprotective agent, does not infringe the patents at issue. On May 8, 2002, the Court granted Alcon's motion for summary judgment of noninfringement on the merits, holding that the proposed use was not directly infringing and that Alcon's filing of an ANDA was insufficient to support a claim of induced infringement. The Court also granted Bausch & Lomb's motion for summary judgment on identical grounds on June 4, 2002. The Court's decision is currently on appeal to the United States Court of Appeals for the Federal Circuit. *See Allergan, Inc. v. Alcon Laboratories, Inc.,* 200 F.Supp.2d 1219 (C.D.Cal.2002) (*Allergan I* ).

Allergan then filed United States Patent No. 6,465,464 B2 (the '464 Patent), on October 15, 2002. The '464 Patent, like the '741 and '415 Patents, is a continuation of the original '329 Patent, and covers the use of brimonidine for neuroprotection. Allergan then listed the '464 Patent in the Orange Book. In response, as required by 21 U.S.C. § 355(j)(2)(A)(vii)(IV), Alcon and Bausch & Lomb filed Paragraph IV certifications and notified Allergan that the use sought under their respective ANDA's did not infringe on the '464 Patent, and that the uses for which both parties were seeking FDA approval (the lowering of IOP) were different than the method of use claimed in Allergan's '464 Patent. As a result of Allergan's filing of the '464 Patent, and the subsequent listing of the '464 Patent in the Orange Book, Allergan re-

ceived an automatic stay of the FDA approval decision on Alcon and Bausch & Lomb's respective ANDAs.

Allergan filed an action for infringement of the '464 Patent in the United States District Court for the District of Delaware on December 16, 2002. Subsequently, Alcon and Bausch & Lomb filed the complaint in the present action on December 23, 2002, seeking a declaratory judgment that the submission of the ANDAs do not infringe on the '464 Patent under 35 U.S.C. § 271(e)(2)(A) and that the commercial manufacture, use, offer for sale, and/or importation of a brimonidine product described in the ANDAs will not constitute infringement of the '464 Patent under 35 U.S.C. § 271. Alcon and Bausch & Lomb also filed motion a motion in the Delaware Court to transfer the Delaware action to this Court on December 30, 2002. The Court stayed the present action in deference to the first filed Delaware action on February 25, 2003. Later that same day, the Delaware Court granted Alcon and Bausch & Lomb's motion to transfer.

Alcon and Bausch & Lomb now move for summary judgment of noninfringement, Allergan opposes the motion.

## II.

### LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

The Court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, the existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; to defeat the motion, the non-moving party must affirmatively set forth facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *Id.* at 256, 106 S.Ct. at 2514. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence of a genuine issue of material fact from the non-moving party. *Vivid Techs., Inc. v. American Science & Eng'g, Inc.,* 200 F.3d 795, 806–07 (Fed.Cir. 1999). The moving party need not disprove the other party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

## III.

### DISCUSSION

Other than the passing of ten months and the substitution of the '464 Patent for the '741 and '415 Patents, the present action presents no new issues of law or fact

that were not considered by the Court in *Allergan I*. The United States Court of Appeals for the Federal Circuit has, however, issued its opinion in *Warner–Lambert Co. v. Apotex Corp.*, 316 F.3d 1348 (Fed.Cir.2003), confirming, in the Court's mind, that the analysis of the issues presented in *Allergan I* (and also in the present case) was correct.

As in *Allergan I*, the present action concerns assertions that Alcon and Bausch & Lomb have and will infringe the '464 Patent in that (1) by filing their ANDAs, Alcon and Baush & Lomb committed infringement under 35 U.S.C. § 271(e)(2), and (2) that Alcon and Bausch & Lomb will induce infringement by doctors prescribing brimonidine in violation of 35 U.S.C. § 271(b).[1]

**A. Infringement under 35 U.S.C. § 271(e)(2)**

■ Alcon and Bausch & Lomb filed their ANDA seeking approval for the use of brimonidine to lower IOP.[2] Allergan's '464 Patent, like its '415 and '741 patents considered in *Allergan I*, covers the use of brimonidine for neuroprotection. As was the case in *Allergan I*, the issue under section 271(e)(2) is whether it is an act of infringement to submit an ANDA which seeks approval only for indications not claimed in the patent.

Under Section 271(e)(2): "[i]t shall be an act of infringement to submit an [ANDA] for a drug claimed in a patent or the use of which is claimed in a patent ...." 35 U.S.C. § 271(e)(2)(A). In *Allergan I*, the Court held that "infringement actions under Section 271(e)(2) must therefore be limited to Controlling Use Patents. An ANDA which seeks approval only for indi-

cations that are not claimed in a patent does not violate Section 271(e)(2). Because there are no such Controlling Use Patents here, Alcon's ANDA does not directly infringe the '415 or '741 Patents." 200 F.Supp.2d at 1230. The Federal Circuit recently reached a similar conclusion in *Warner–Lambert*. 316 F.3d at 1354–55.

In *Warner–Lambert*, Apotex, a generic manufacturer, filed an ANDA seeking approval to market a generic formulation of the drug gabapentin at the expiration of Warner–Lambert's epilepsy method patent. 316 F.3d at 1352. Apotex sought approval to market gabapentin to treat partial seizures in epileptics, an application for which Warner–Lambert's drug was approved. *Id.* Apotex filed with its ANDA a Paragraph IV Certification, certifying that its product would not infringe on Warner–Lambert's patent because Apotex was not seeking approval to use gabapentin for the treatment of neurodegenerative diseases, but only the treatment of epilepsy. *Id.* at 1353. Warner–Lambert then filed an infringement action contending that Apotex's submission of its ANDA infringed on Warner–Lambert neurodegenerative method patent under section 271(e)(2) on the theory that patients and doctors would use or prescribe gabapentin for all purposes, including the treatment of neurodegenerative diseases. *Id.* Warner–Lambert also claimed that Apotex would induce infringement under section 271(b).

The Federal Circuit, in affirming the district court's grant of summary judgment on both grounds, considered whether "it is an act of infringement under 35 U.S.C. § 271(e)(2)(A) to submit an ANDA seeking approval to make, use, or sell a

---

1. Both Alcon and Bausch & Lomb urge the Court to hold that issue preclusion applies to estop Allergan's infringement claims. While issue preclusion could well apply in the current action, the Court nonetheless sees fit to

set forth its reasoning as to the current claims.

2. ANDA 76–260 is the same ANDA at issue in *Allergan I*.

drug for an approved use if any other use of the drug is claimed in a patent, or if it is only an act of infringement to submit an ANDA seeking approval to make, use, or sell a drug if the drug or the use *for which FDA approval is sought* is claimed in the original." *Id.* at 1354. Thus, the section 271(e)(2) issue considered in *Warner–Lambert* was not only identical to the section 271(e)(2) issue analyzed in *Allergan I,* but it is also the same section 271(e)(2) issue at dispute in the present action. The *Warner–Lambert* concluded, commensurate with this Court's holding in *Allergan I,* "that it is not an act of infringement to submit an ANDA for approval to market a drug for a use when neither the drug nor that use is covered by an existing patent, and the patent at issue is for a use not approved under the NDA." *Id.*

According to the *Warner–Lambert* court, the rationale behind the Hatch–Waxman Act mandates that actions under section 271(e)(2)(A) must be limited to controlling use patents.[3] In evaluating Warner–Lambert's argument to the contrary, the Federal Circuit stated:

"Warner–Lambert's proposed interpretation is inconsistent with both of the stated purposes of the Hatch–Waxman Act, and would confer substantial additional rights on pioneer drug patent owners that Congress clearly did not intend to confer. If Warner–Lambert's interpretation were correct, for example, an NDA holder would be able to maintain its exclusivity merely by regularly filing a new patent application claiming a narrow method of use not covered by its

NDA. It would then be able to use section 271(e)(2)(A) as a sword against any competitor's ANDA seeking approval to market an off patent drug for an approved use not covered by the patent. Generic manufacturers would effectively be precluded altogether from entering the market."

*Id.* at 1359.

Allergan's claim, therefore, cannot be predicated on a non-controlling use patent. Allergan appears to argue, however, that the use claimed under the ANDA is covered by the '464 Patent-in-suit. According to Allergan, there is a distinction between the label for Alphagan®, on the one hand, and the approved use for brimonidine, on the other. Although Allergan indicates that the Alphagan® label states that the product is "indicated for lowering intraocular pressure in patients with open-angle glaucoma or ocular hypertension," Allergan contends that the use of brimonidine for neuroprotection to treat open-angle glaucoma is also an approved method of use. The Court finds no support for this argument, either in the product label for Alphagan® or in the FDA approval letter for Alphagan®. (Alcon Ex. A at 5–6, Ex. N at 153.)[4]

Neither of Allergan's arguments preclude the ultimate conclusion that the '464 Patent, like the '415 and '741 patents in *Allergan I,* are not controlling use patents. As the '464 Patent is not a controlling use patent, there can be no action for infringement under section 271(e)(2) based on Alcon and Bausch & Lomb's ANDA filings

---

**3.** At oral argument, Allergan repeated its argument that Alcon and Bausch & Lomb are not traditional generic manufacturers, so they are subject to a different analysis of potential infringement due to their advertising efforts. As noted by counsel for Bausch & Lomb, however, *"any person* may file [with the FDA] an abbreviated application for the approval of a new drug." 21 U.S.C. § 355(j)(1). Thus,

where Congress has not delineated between one potential generic manufacturer and another, the Court also declines to adopt any such distinction in its analysis.

**4.** The Court also notes that Allergan's position appears inconsistent with its position in *Allergan I.*

because those ANDAs do not seek approval for use of brimonidine as a neuroprotective agent. "Congress clearly intended to limit actions for infringement of method-of-use patents under § 271(e)(2)(A) to 'controlling use patents,' or patents that claim an approved use of a drug." *Warner–Lambert*, 316 F.3d at 1362. Accordingly, "it is not an act of infringement to submit an ANDA for approval to market a drug for a use when neither the drug nor that use is covered by an existing patent, and the patent at issue is for a use not approved under the NDA." *Id.* at 1354. Alcon and Bausch & Lomb's ANDA applications seek to sell brimonidine to reduce IOP, the use not covered in Allergan's '464 patent. Accordingly, summary judgment of Alcon and Bausch & Lomb's noninfringement is appropriate.

## B. Infringement under 35 U.S.C. § 271(b)

Under § 271(b), "whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Inducement of infringement under section 271(b) requires specific intent and action to produce the infringement. 316 F.3d at 1364. "Inducement requires proof that the accused infringer knowingly aided and abetted another's direct infringement of the patent." *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1306 (Fed.Cir.1999). Although circumstantial evidence may prove the intent element, active, knowing steps are required to prove inducement of infringement. *Organon Inc. v. Teva Pharm., Inc.*, 244 F.Supp.2d 370, 378 (D.N.J.2002). The principles of inducing infringement have are analogous to aiding and abetting in a

criminal context. *National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1196 (Fed.Cir.1996).[5]

Allergan argues that Alcon and Bausch & Lomb will, by sale of its generic brimonidine, induce infringement of the '464 Patent. According to Allergan, doctors who currently prescribe Alphagan® as a neuroprotective agent will prescribe Alcon and Bausch & Lomb's generic brimonidine not only to reduce IOP, but also for use as a neuroprotective drug, thereby infringing on Allergan's patent. Allergan additionally contends that Alcon and Bausch & Lomb are currently promoting such infringing uses through information contained in databases on their respective Internet websites.

Under section 271(b) and the Declaratory Judgment Act, inducement actions may be proper based on anticipated future infringing conduct in limited circumstances. *See Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1570 (Fed.Cir. 1997). Although declaratory judgment actions are most often brought by potential infringers against patentees, patentees may also bring such an action against parties who will allegedly infringe in the future, so long as there is a substantial controversy of immediacy and reality. *See Lang v. Pacific Marine and Supply Co., Ltd.*, 895 F.2d 761, 765 (Fed.Cir.1990).

Allergan, both in its briefing and at oral argument, relied on *Fina Research S.A. v. Baroid Drilling Fluids, Inc.*, 98 F.3d 1357, 1996 WL 521465 (Fed.Cir.1996), as support for the argument that the section 271(b) claim is proper. *Fina* involved claim for inducement by Fina, who manufactured a

**5.** Bausch & Lomb argues Allergan's section 271(b) argument is barred because it is premature based on the prohibition on declaratory judgment actions brought within 45 days of receiving notice from an ANDA filer (Allergan brought its Delaware action 41 days after receiving notice). 21 U.S.C. § 355(j)(5)(B)(iii). Under this argument, however, Bausch & Lomb admits that Allergan could merely refile the current action if the Court granted summary judgment solely on those grounds.

product as an ingredient in drilling mud and sold that product outside the United States. *Id.* at 1480. If the ingredient produced by Fina were mixed with other ingredients, direct infringement of an American patentee's patents could occur. *Id.* As a result, the patentee threatened Fina that if the product were sold in the United States, the patentee would bring suit. *Id.* Fina therefore sought a judicial determination under section 271(b) that future sales would not induce infringement. *Id.* The *Fina* court declined to adopt the position urged by Fina that direct infringement was required to create an actual controversy, instead noting that courts should resolve such issues on a case by case basis. *Id.* at 1485.

Allergan contends that, based on *Fina,* the Court should allow the inducement claim to proceed under section 271(b). The *Fina* court, however, noted that concrete steps had been taken to conduct activity that would constitute infringement, so the need for judicial attention was real and immediate. *Id.* at 1485. Indeed, this conclusion was rather easy for the *Fina* court to reach, as the potentially infringing conduct had already occurred abroad. The only question was whether such identical conduct would constitute infringement in the United States. In the present case, the only conduct by Alcon and Bausch & Lomb is the filing of their respective AN-DAs and speculation as to what may occur if FDA approval follows. Furthermore, the Court finds little or no measure of immediacy or reality to Allergan's claims, as the inducement claim is not evident from the face of the ANDAs, and arguments concerning post-approval conduct are entirely speculative. *Glaxo,* 110 F.3d at 1571.

Allergan nevertheless argues that the inducement claim should proceed. Allergan contends it has evidence that Alcon and Bausch & Lomb will promote neuro-

protection as a treatment for glaucoma, and brimonidine as a neuroprotective drug. This Court has already addressed the speculative nature of Allergan's argument. In *Allergan I,* the Court stated:

> "As a practical matter, the *a priori* viewpoint of the Court requires it to speculate into what promotional efforts Alcon will undertake if its ANDA is approved, and whether the physicians will then actually infringe the patent by prescribing its use as a neuroprotective agent. The speculation is not only practically difficult, but is constitutionally problematic."

200 F.Supp.2d at 1232.

The *Warner–Lambert* court, like this Court in *Allergan I,* rejected Allergan's argument. After concluding its analysis under section 271(e)(2), the *Warner–Lambert* court stated that it "might close the opinion here" without considering whether a claim for inducement under section 271(b) could proceed. *Id.* at 1363. Nevertheless, the *Warner–Lambert* court examined the claim under section 271(b), concluding that the issue *might arise if the ANDA claim was eventually approved. Id.* (emphasis added). The *Warner–Lambert* court concluded that the claim was entirely too speculative:

> "the request to make and sell a drug labeled with a permissible (non-infringing) use cannot reasonably be interpreted as an act of infringement (induced or otherwise) with respect to a patent on an unapproved use, as the ANDA does not induce anyone to perform the unapproved acts required to infringe. That a generic maker may someday induce someone to infringe can only be determined when that act occurs, and § 271(e)(2) was not designed to cover such future acts."

316 F.3d at 1364–65.

In addition, the *Warner–Lambert* court implied that the section 271(b) claim was

only examined in the first place because the district court had unnecessarily considered the issue in an effort to foreclose a future claim after the approval of the ANDA. *Id.* at 1363. Accordingly, as a preliminary matter, Allergan's argument that the Court somehow didn't address the section 271(b) claim in *Allergan I* misses the point—the Court's determination that section 271(e)(2) could not serve as the basis for an action of induced infringement in the pre-ANDA approval stage would make little sense if such an action could simply be brought under section 271(b). *Id.*

■ The Court finds no rationale that alters the conclusion in *Allergan I* that Allergan's inducement argument is entirely too speculative. Alcon and Bausch & Lomb's generic brimonidine products have not yet been approved for use by the FDA. Accordingly, there have been no infringing sales, prescriptions or use of generic brimonidine, nor could there be at this stage. Allergan is not, of course, precluded from bringing its inducement of infringement action after, for instance, FDA approval. It would, however, be nonsensical to allow a different result, considering the Court's holding concerning Allergan's section 271(e)(2) claim, as a patentee could effectively obtain the same relief and stall even unapproved ANDA applications from moving forward by seeking declaratory judgment under section 271(b) and requesting discovery.[6]

Furthermore, if Allergan were allowed to bring an inducement claim under section 271(b) prior to FDA approval and the expiration of 45 days from notice of filing of the ANDA, notwithstanding that Allergan has no cause of action under section 271(e)(2), Allergan would effectively circumvent the rationale and intent of the Hatch–Waxman Act. The express intent of the Hatch–Waxman Act was to bring low cost generic drugs to market more quickly by exempting certain research uses from patent infringement liability, while still providing a jurisdictional "hook" for patentees to make their infringement claims before the drugs come to market. This purpose would be frustrated if a pioneer drug manufacturer was able to simply use section 271(b) to invoke the protections set aside for a patentee under section 271(e)(2), even though the patentee's section 271(e)(2) claim could not be sustained. Such a result would not only turn the intent of the Hatch–Waxman Act on its head, but would also allow, in effect, a monopoly for Allergan in the brimonidine market when such rights could not be obtained through the normal patent process.

The Court therefore finds it appropriate to award Alcon and Bausch & Lomb summary judgment of noninfringement under section 271(b).

## IV.

## CONCLUSION

Accordingly, Alcon and Bausch & Lomb's motions for summary judgment of noninfringement under 35 U.S.C. § 271(e)(2) and 35 U.S.C. § 271(b) are hereby GRANTED.

IT IS SO ORDERED.

---

6. Allergan contends that the Court should, at a minimum, allow at least six months discovery to establish that Alcon and Bausch & Lomb know of brimonidine's neuroprotective effects, that they have taken steps to promote those effects, and to show their intent to promote brimonidine for infringing uses. As Allergan's inducement infringement claims are too speculative to proceed, such discovery would be inappropriate at present.